## PINK FAGGETT V. THE STATE.

No. 15597.   Delivered October 19, 1932.
Appeal Reinstated November 23, 1932.
Rehearing Denied January 11, 1933.
Reported in 55 S. W. (2d) 842.

The opinion states the case.

*W. A. McIntosh* and *Milton Greer Mell,* both of Gilmer, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is possession of intoxicating liquor for the purpose of sale; the punishment, confinement in the penitentiary for one year.

The recognizance on appeal is fatally defective in that it binds appellant to appear in the district court of Upshur county from day to day and term to term in order to "abide the decision of the Court of Civil Appeals of the State of Texas." Appellant being enlarged upon an invalid recognizance, this court is without jurisdiction.

The appeal is dismissed.

*Dismissed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON THE MERITS.

CHRISTIAN, JUDGE.—The record having been perfected, the appeal is reinstated and the case considered on its merits.

No statement of facts is brought forward. The judgment recites, in substance, that appellant and his counsel appeared in open court, and that both parties announced ready for trial. Further, it recites that appellant pleaded guilty to the charge contained in the indictment, and, although admonished by the court of the consequences of his plea, persisted in making such plea. Again, it is recited in the judgment that it appeared to the court that appellant was sane and that he was uninfluenced in entering a plea of guilty by any consideration of fear, or by any persuasion or delusive hope of pardon prompting him to confess his guilt. At the time of entering his plea of guilty, appellant presented through counsel appointed by the court his

application for a suspended sentence. The verdict of the jury found appellant guilty of possessing intoxicating liquor for the purpose of sale, as charged in the indictment, and assessed his punishment at confinement in the penitentiary for one year, but expressly stated that it was not recommended that sentence be suspended.

In his first amended motion for a new trial, appellant alleged that he was an unlettered and untutored negro more than fifty years of age; that he could only write to the extent of signing his name; that he had never before been charged with a criminal offense; that he had not been arrested on the indictment until the fifth day of May, 1932, on which day he learned for the first time that an indictment had been returned; that he had no witnesses present in court at the time his case was called for trial, and had no attorney to represent him, except counsel appointed by the court to present his application for a suspended sentence; that the reason he had no counsel was that the officer who arrested him stated to him in the presence of his bondsman that he did not need a lawyer, but that it would only be necessary for him to come to the county seat with his bondsman on May 9, 1932; that he understood from this statement that his case would not be tried on May 9th, but would be set for trial on a later date; that the state relied for a conviction upon the fact that officers discovered in his home three pints of intoxicating liquor; that, if it had not been for the words and acts of the arresting officer, he would have explained on the trial of his case the presence of the liquor in his home; that on the day preceding the discovery of the whisky a white man whose name he did not know came to his home and requested his (appellant's) wife to permit him to leave a package with her; that, permission being granted, this man left a paper sack, which later was found to contain the whisky discovered by the officers in his home; that, at the time this man came to his home, he (appellant) was a short distance away in his field; that he did not give this man permission to leave the package in his home and did not know he was leaving it there; that one Babe Hanson was present and saw the package left in his home; that this witness told him about the transaction shortly after its occurrence and promised to be present on his trial, saying it was not necessary to issue a subpoena for him; that his (appellant's) wife could not testify in his behalf on the trial because of the fact that she had been indicted for an offense growing out of the same transaction; that the case against his wife had not been tried, and that, if he had been represented by

counsel, he would have filed an application for a severance requesting that his wife be tried first; that, if he had known that his case was to be tried on May 9th, he would have been represented by counsel and would have had in court the witness Babe Hanson, who would have testified in his behalf; that his (appellant's) wife would have testified that the mash found in his home was "chicken feed in soak" and was the kind and character of feed she was in the habit of feeding to her flock of chickens, and that same was not mash for use in making whisky; that he was entirely ignorant of the methods of court procedure and his rights and duties in the case; that relying upon the statement and instructions of the deputy sheriff, he did not employ an attorney to represent him and did not have his witnesses in court when his case was called for trial; that, being suddenly confronted with the necessity of going to trial without an attorney and witnesses and being frightened by the strange surroundings, and not knowing what to do, he entered a plea of guilty through counsel appointed for him by the court for the purpose of filing and presenting his application for a suspended sentence; that the attorney appointed by the court did not go beyond the duties imposed upon him in presenting his application, and knew nothing of his case; that immediately after the return of the verdict of the jury finding him guilty and refusing to suspend his sentence, he employed counsel of his own choice to present his motion for a new trial; that there were a large number of witnesses who would testify to his previous good character and reputation as a peaceable and law-abiding citizen; that, if granted a new trial, these witnesses would appear and testify.

Attached to the motion was the affidavit of E. R. Bradley, in which it was, in substance, averred that he had known appellant for many years and that he bore a good reputation for being peaceable and law-abiding; that he heard the arresting officer tell appellant at the time he (affiant) signed appellant's bond that he did not need a lawyer; that nothing was said about the case being tried on May 9th at that time; that he understood from the conversation that the case would be set on May 9th but not tried; that he had also advised appellant not to employ a lawyer before May 9th; that appellant was an ignorant negro about fifty years of age. In the affidavit of Babe Hanson, which was also attached to the motion, it was averred that he was present and saw an unknown white man deliver a paper sack to appellant's wife, which she carried into the house; that appellant was not present at the time, but was in

his field a short distance away; that he told appellant he would testify to such fact, and agreed to come to court without the service of a subpoena; that he did not know appellant's case would be tried on May 9th.

Aside from appellant's plea of guilty, witnesses for the state, as well as appellant, might have detailed facts showing overwhelmingly that appellant was guilty. Convincing testimony might have mitigated against the granting of a suspended sentence. If appellant should have before another jury the testimony of the witnesses he seeks, such testimony might, as far as the record reflects the matter, be contradictory of appellant's own testimony given on the trial of the present case. Whether this is true, we are unable to determine in the absence of a statement of facts. In Guillen v. State, 104 Texas Crim. Rep., 471, Judge Lattimore, speaking for the court, used language as follows: "A verdict upon a plea of guilty in any event would not be set aside upon the insufficiency of the testimony, or the lack of an attorney to represent the accused, unless it be shown that through no fault on the part of the accused he was prevented from making some defense, or otherwise suffered some tangible injury."

In any event, consideration of the motion for new trial and affidavits attached thereto fails to convince us that the trial court was not warranted in reaching the conclusion that appellant, by his own negligence, failed in advance to make arrangements with attorneys to represent him, and failed to make application for his witnesses. In a felony case less than capital, the law does not make the presence of an attorney essential. It recognizes the right of the accused to be represented by counsel; but imposes upon him the duty of using diligence in securing representation. Fuller v. State, 117 Texas Crim. Rep., 558, 37 S. W. (2d) 156; Sowells v. State, 99 Texas Crim. Rep., 465, 270 S. W., 558.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant makes a motion persuasive and appealing, but we hardly see how it could be granted without a departure, and the setting of a precedent whose logical result would be exceedingly hurtful. He was tried on May

9, 1932, and pleaded guilty. The judgment fully recited all those conditions required by statute, such as that he was admonished by the court, and persisted, that he was sane and uninfluenced, etc. He was given the lowest penalty. Under the law there had to be testimony introduced, and we must presume that this was done. His motion for new trial was filed May 13, 1932, and was supported by affidavits prepared and sworn to on May 10th, the next day after he pleaded guilty, showing fully that he procured legal assistance either the day of his trial or the next day; yet this case was brought here on appeal without any statement of its facts, notwithstanding the law gave appellant ninety days after the overruling of his motion for new trial in which to prepare and file such statement of facts. We have, as said substantially in the original opinion, no means of knowing what the state's case was or is. The record shows enough to make us know that officers searched appellant's house and found a quantity of whisky and mash. Appellant has a sworn motion for new trial which, under the authorities, is but a pleading, but statements therein are interesting. It appears therefrom that the ubiqitous stranger who has so maliciously inveigled many of our innocent citizens into trouble—a white man in this case—came to the home of appellant, who was a negro, in his absence, and left a paper sack containing three pints of whisky. The very next day this whisky was found in appellant's house by searching officers. He sets out in said motion that after the search and finding of this whisky, and before he was arrested on this indictment, he had a conversation with one Babe Hanson, who told him he was present when this whisky was left at his house and knew it was left there by this white man, and would testify for him on his trial to this fact. It would appear a little unusual for one so ignorant of how to prepare for an approaching trial, as to furnish ground for this court setting aside his conviction upon a plea of guilty, when the record shows that he was preparing for trial by talking to witnesses before he was arrested. One deputy sheriff told him to get ready for trial; another that he need not do so. This would not justify no preparation.

Appellant cites two cases as authority for requesting us to grant him a new trial, in one of which it appears that the accused had hired and paid an attorney who was sick at the time of trial and therefore could not appear and represent him. In the other case the accused had hired a lawyer to represent him upon his preliminary trial, and he thought the same lawyer would represent him upon the trial in chief. We do not think

these cases furnish justifiable precedent for any grant of the rehearing in this case.

The motion for rehearing will be overruled.

*Overruled.*